**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION**

| | |
|---|---|
| JOSE RODRIGUEZ-ORTIZ, individually and on behalf of all others similarly situated,<br><br>**Plaintiff,**<br><br>vs.<br><br>**H.P. SERVICES, CORP.,**<br><br>**Defendant.** | CIV. A. NO.<br><br>JURY TRIAL DEMANDED<br><br>CLASS/COLLECTIVE ACTION<br><br>PURSUANT TO 29 U.S.C. § 216(b)/ FED. R. CIV. P. 23 |

**PLAINTIFF'S COLLECTIVE ACTION
AND CLASS ACTION COMPLAINT**

### I.  SUMMARY

1. Jose Rodriguez-Ortiz (Rodriguez-Ortiz) brings this lawsuit to recover unpaid overtime wages and other damages from HP Services, Corp. (HP Services) under the provisions of section 216(b) of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended 29 U.S.C. §§ 201, et seq., the Puerto Rico Wage Payment Statute (the "PRWPS"), 29 L.P.R.A. §§ 171, et seq., §§ 250, et seq., and §§ 271, et seq., and the Virgin Islands Fair Wage and Hours Act (the "VIFWHA"), 24 V.I.C. § 1 et seq.

2. Rodriguez-Ortiz and those similarly situated regularly worked for HP Services in excess of 40 hours each week. As shown below, HP Services failed to properly compensate Rodriguez-Ortiz and all other similarly situated workers. When these workers were paid a day rate, they were not paid overtime. When they were paid hourly, HP Services failed to properly calculate their rate of pay,

1

by failing to include all remuneration received, thereby depriving them of the appropriate rate of overtime pay. HP Services also improperly classified Rodriguez-Ortiz and those similarly situated as independent contractors. This action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## II. Jurisdiction And Venue

3. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

4. Venue is proper in the U.S. District Court District of Puerto Rico pursuant to 28 U.S.C. § 1391(b).

5. The Court has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d). The Court also has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. § 1367.

6. HP Services maintains its headquarters in Puerto Rico.

## III. Parties

### A. Jose Rodriguez Ortiz

7. Rodriguez-Ortiz is an adult resident of Puerto Rico. His written consent is on file with the Court.

8. Rodriguez-Ortiz worked for Louis Berger through H.P. Services and performed work for them and in the Virgin Islands and Puerto Rico.

9. Rodriguez-Ortiz performed deliveries. He would deliver generators and heavy equipment for the work sites of the Defendants.

10. Rodriguez-Ortiz was paid a flat day-rate which ranged between $200 to $250 per day regardless of the number of hours he worked.

11. Rodriguez-Ortiz customarily worked 12 or more hours a day, and consistently worked over 60 hours a week. He was not paid overtime for hours worked over 40 in a workweek.

**B. Opt-In Plaintiffs**

12. The following Plaintiffs who have opted into this matter were also employed by HP Services:

>Maximino Delgado-De Leon
>Jorge Resto-Cortes
>Gerardo Nieves
>Joel Rodriguez-Vega
>Jose M Garcia-Roman
>Carlos Casillas
>Billy Aponte-Rodriguez
>Carlos M Torres-Cruz
>Luis F. Crespo Gonzalez
>Miguel A Santiago
>Abnel Ramos-Mendez
>Frank Reyes
>Jose L Morales-Espada
>Luis Navarro-Betancourt
>David Velez-Olivo
>Bryan Acevedo
>Samuel Baez-Concepcion
>Alex M. Rodriguez
>Rafael Vazquez
>Orlando Cubano-Velez
>Manuel A Correa-Cruz
>Manuel E Diaz-Monzon
>Miguel Garcia-Barrios
>Juan Carlos Gautier-Valentin
>Jorge M Diaz-Lopez
>Jetsny Vizcarrondo
>Orlando Rosado-Fuentes
>Jean L Rosado-Santiago
>Edwin Nieves-Torres
>Luis A Torres-Vega
>Jose O Rivera-Medina
>Carlos Encarnacion-Rivera

13. These consents are on file with the Court.

14. The Opt-in Plaintiffs worked through HP Services for Louis Berger in Puerto Rico.

15. Like Rodriguez-Ortiz, the Opt-in Plaintiffs were paid a day rate without overtime compensation.

16. Like Rodriguez-Ortiz, the Opt-in Plaintiffs provided relief work after the hurricanes.

17. The Opt-in Plaintiffs customarily worked 12 or more hours a day, and consistently worked over 60 hours a week. They were not paid overtime for hours worked over 40 in a workweek.

### C. Ortiz represents multiple proposed classes under the FLSA and Rule 23

18. Rodriguez-Ortiz brings this action on behalf of multiple classes. First, Rodriguez-Ortiz brings this action individually and on behalf of all other similarly situated workers who were classified as independent contractors and paid by HP Services' day-rate system. HP Services paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek. The class of similarly situated employees or potential class members sought to be certified is defined as follows (the "Day Rate Class"):

> **All workers employed by or on behalf of HP Services and any subsidiaries, alter egos, or co-employers who were classified as independent contractors and paid a day-rate while staffed to Louis Berger.**

19. Plaintiff Rodriguez-Ortiz also brings this action individually and on behalf of all other similarly situated workers who were classified as independent contractors and paid by HP Services as hourly employees, whose overtime rate was improperly calculated. The class of similarly situated employees or potential class members sought to be certified is defined as follows (the "Hourly Class"):

> **All workers employed by or on behalf of HP Services and any subsidiaries, alter egos, or co-employers who were classified as independent contractors and received an hourly rate plus fringe payments while staffed to Louis Berger.**

20. The Day Rate Class and the Hourly Class are collectively the "Putative Class Members."

21. Rodriguez-Ortiz further seeks class certification pursuant to FED. R. CIV. P. 23 under Puerto Rico Law (the "Puerto Rico Class").

22. Rodriguez-Ortiz brings this action on behalf of themselves and on behalf of the Puerto Rico Class:

> **All workers employed by or on behalf of HP Services and any subsidiaries, alter egos, or co-employers who were classified as independent contractors and paid a day-rate or received an hourly rate plus fringe payments in Puerto Rico while staffed to Louis Berger.**

23. Plaintiff Rodriguez-Ortiz brings this this action behalf of himself and on behalf of the Virgin Islands Class:

> **All workers employed by or on behalf of Louis Berger and any subsidiaries, alter egos, or co-employers who were classified as independent contractors and paid a day-rate in the Virgin Islands.**

24. Defendant HP Services is registered and headquartered in Puerto Rico. It has made a special appearance in this case.

25. HP Services and Louis Berger worked together in concert to employ the Putative Class Members in Puerto Rico.

26. A Wage & Hour investigation was conducted regarding Louis Berger and HP Services' pay practices.

27. The Case ID is 1841216.

28. Louis Berger agreed to pay more than $5,000,000.00 in back wages for it and the subcontractors.

29. One of these subcontractors was HP Services.

30. The pay practices found to be overtime violations are the same pay practices which Rodriguez-Ortiz and the Putative Class Members were subjected to and are at issue in this lawsuit.

## IV. COVERAGE UNDER THE FLSA

31. At all times hereinafter mentioned, HP Services has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

32. At all times hereinafter mentioned, HP Services has been part of an enterprise within

5

the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

33. At all times hereinafter mentioned, HP Services has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce - such as relief work equipment, hand tools, computers, automobiles, and cell phones – by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

34. At all times hereinafter mentioned, Rodriguez-Ortiz and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

35. At all times hereinafter mentioned, HP Services has been an employer within the meaning of 29 L.P.R.A. § 250b and 24 V.I.C. § 1 et seq.

36. As will be shown through this litigation, HP Services treated Rodriguez-Ortiz, and indeed all of its hurricane relief workers that were classified as independent contractors or employees and paid a daily rate without overtime compensation or whose overtime rate was miscalculated.

37. HP Services's misclassification of Rodriguez-Ortiz and the Putative Class Members as independent contractors does not alter their status as employers for purposes of this FLSA collective or class action.

## V. Facts

38. Following the massive devastation caused by Hurricane Irma and Hurricane Maria, FEMA and other state and federal governmental departments, such as the Department of the Army implemented programs to provide aid and repairs to Puerto Rico and the Virgin Islands.

39. As of November 1, 2018, FEMA alone awarded more than $4 billion for public assistance programs.[1]

40. As part of these efforts, Louis Berger was awarded multiple contracts for power generation and repair. It deployed "more than 300 staff and independent contractors on the ground in support of the Federal Emergency Management Agency (FEMA), U.S. Army Corps of Engineers (USACE), U.S. Postal Service (USPS) and Defense Logistics Agency (DLA) missions to bring much needed manpower, equipment and supplies" to residents of Puerto Rico[2] and the Virgin Islands.

41. Louis Berger was the prime contractor and subcontracted this work through HP Services and other subcontractors. Upon information and belief, Louis Berger and HP Services shared supervision and control of Rodriguez-Ortiz and the Putative Class Members' work schedules, determined their rate and method of payment, and jointly maintained employment records for work performed under the governmental programs. These entities jointly provided delivery, repairs, and service and maintenance on generators for use in Puerto Rico and the Virgin Islands.

42. To implement this work, the HP Services hired workers such as Rodriguez-Ortiz to perform skilled and manual labor to provide handyman, laborer, or mechanic services.

43. For this work, Rodriguez-Ortiz and the Putative Class Members were misclassified as independent contractors. While exact job titles and job duties may differ, these workers are subjected to the same or similar illegal pay practices for similar work.

44. For the Day Rate Class, HP Services classified all of these workers as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

---

[1] https://www.fema.gov/news-release/2018/11/01/fema-public-assistance-funding-tops-4-billion-puerto-rico
[2] https://www.louisberger.com/news/relief-bound-puerto-rico-and-virgin-islands

45.     For the Hourly Class, HP Services improperly excluded certain payments it called "fringe" payments from the regular rate of pay, and as a result Rodriguez-Ortiz and the Hourly Class members were not paid overtime at the proper overtime rate required by federal law.

46.     HP Services' pay practices violate the FLSA, Puerto Rico wage laws, and US Virgin Island wage laws.

47.     Rodriguez-Ortiz and the Putative Class Members generally provided labor, transportation, and/or mechanical services in connection with restoration of power in Puerto Rico after the hurricanes, including installing, maintaining, servicing, and fueling generators. Initially, some were paid a day rate by HP Services, but were then switched to hourly pay, paid him an overtime rate, as well as some "fringe" pay. Even though in certain instances the overtime rate was 1.5 times the regular hourly rate; it did not incorporate the fringe pay and as a result the overtime rate was improper.

48.     Rodriguez-Ortiz and the Putative Class Members had no power to hire or fire other workers. All aspects of their work were controlled by HP Services and Louis Berger. HP Services and Louis Berger retained the authority to hire and fire, they issued pay, supervised, controlled, and directed Rodriguez-Ortiz and the Putative Class Members, and they controlled all aspects of Rodriguez-Ortiz and the Putative Class Members' job activities.

49.     HP Services and Louis Berger set Rodriguez-Ortiz and the Putative Class Members' rates of pay and work schedule and prohibited them from working other jobs for other companies while they were working on jobs for HP Services. HP Services and Louis Berger directly determined Rodriguez-Ortiz and the Putative Class Members' opportunity for profit and loss. Rodriguez-Ortiz and the Putative Class Members' earning opportunity was based on the number of days HP Services scheduled them to work.

50.     HP Services and Louis Berger ordered the hours and locations Rodriguez-Ortiz and the Putative Class Members worked, tools used, and rates of pay received.

51. Rodriguez-Ortiz and the Putative Class Members were economically dependent on HP Services and Louis Berger during their employment.

52. Rodriguez-Ortiz and the Putative Class Members did not incur operating expenses like rent, payroll, marketing, and insurance.

53. No real investment was required of Rodriguez-Ortiz or the members of the Putative Class to perform their jobs; they did not bring building supplies, tools, or equipment to the island. These items were provided by HP Services and Louis Berger or its clients.

54. The job functions of Rodriguez-Ortiz and the members of the Putative Class were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

55. The members of the Putative Classes did not have any supervisory or management duties. Finally, for the purposes of their overtime claims, the members of the Putative Class performed substantially similar job duties related to repair work and maintenance on generators for use in Puerto Rico's recovery efforts.

56. Rodriguez-Ortiz performed routine transportation, manual, and technical labor duties that were largely dictated by HP Services and Louis Berger and/or their clients.

57. All of the members of the Putative Classes performed the same or similar job duties and are subjected to the same or similar policies and procedures, which dictate the day-to-day activities performed by each person.

58. The members of the Putative Class also worked similar hours and were denied overtime as a result of the same illegal pay practice. They all worked in excess of 40 hours each week and were often scheduled for 12 hour shifts for weeks at a time. Instead of paying them overtime, HP Services paid the members of the Putative Classes a day-rate or an inappropriate overtime rate and misclassified them as independent contractors.

59. HP Services' policy of failing to properly pay its independent contractors, including Rodriguez-Ortiz, violates the FLSA because these workers are, for all purposes, employees performing non-exempt job duties.

60. Because Rodriguez-Ortiz and the Putative Class Members were misclassified as independent contractors by HP Services and/or paid the incorrect overtime rate, they should receive the correct amount of overtime for all hours that they worked in excess of 40 hours in each workweek.

61. HP Services' day-rate system and fringe pay practices violate the FLSA because Rodriguez-Ortiz and the Putative Class Members did not receive the correct amount of pay for hours worked over 40 hours each week.

## VI. FLSA Violations

62. As set forth herein, HP Services has violated Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their employment in excess of 40 hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

63. HP Services knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. HP Services' failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

64. Accordingly, Rodriguez-Ortiz and the Putative Class Members are entitled to overtime wages, plus liquidated damages, attorney's fees and costs.

## VII. Puerto Rico Violations

65. Rodriguez-Ortiz brings this claim under Puerto Rico law as a Rule 23 class action.

66. Puerto Rico law requires employers like HP Services to pay employees at one and one-

half (1.5) times the regular rate of pay for hours worked in excess of forty (40) hours in any one week. HP Services was subject to Puerto Rico Law and Rodriguez-Ortiz and the Puerto Rico Class Members are entitled to overtime pay under this law. P.R. Laws Ann. tit. 29 § 271 et seq ("Law 379").

67. HP Services has violated Puerto Rico law by failing to compensate their employees for hours worked in excess of 40 hours per week at rates less than 1 and ½ times the regular rates for which they were employed.

68. Puerto Rico Code 29 L.P.R.A. § 171, et seq., limits the deductions that can be taken from a worker's wages. HP Services made illegal deductions from the wages of Rodriguez-Ortiz and the Putative Class Members. These deductions were not authorized and were done willfully.

69. Puerto Rico Code 29 L.P.R.A. § 173 requires employers to pay their employees for all hours worked, at intervals not to exceed 15 days. If employee is dismissed from work, he must be paid no later than the next official payday. HP Services regularly and willfully failed to properly pay Rodriguez-Ortiz and the Putative Class Members and failed to do so in the time required. Puerto Rico Code provides that employers who violate the provisions of this act are liable to affected employees for unpaid wages, liquidated damages of an amount equal to the amount owed, costs, attorney's fees, and other appropriate relief. 29 L.P.R.A. § 177.

70. Puerto Rico Code 29 L.P.R.A. § 185a, et seq., applies to protect workers from wrongful discharge. Any employee who is terminated without just cause is entitled to mandatory severance under Puerto Rico law. "Just cause for discharge of an employee shall be understood to be that which is not based on legally prohibited reasons and on a whim of the employer." 29 L.P.R.A. § 185b. HP Services willfully violated these statutes when Rodriguez-Ortiz or the Putative Class Members were terminated without just cause and not paid the required severance.

71. Puerto Rico Code 29 L.P.R.A. § 250 et seq., mirrors the federal requirements for minimum wage. On several occasions, HP Services failed to pay members of the class for hours

worked. These class members regularly performed manual labor for 10 and 12 hour periods per day but were underpaid or not paid for altogether for this work. HP Services willfully violated these sections by failing to pay Rodriguez-Ortiz and the Putative Class Members for all hours worked.

72. Puerto Rico Code 29 L.P.R.A. § 271, et seq., mandates that regular working hours for non-exempt employees are eight (8) hours per day, and forty (40) hours per week. All hours worked in excess of eight hours in any work day or forty hours in a week must be compensated as overtime. 29 L.P.R.A. § 273(a), §274. HP Services willfully violated these sections by failing to properly compensate Rodriguez-Ortiz and the Putative Class Members for all hours actually worked in excess of eight per day or forty per week. Rodriguez-Ortiz and the Putative Class Members regularly worked in excess of 12 hours per day, 6-7 days per week.

73. Puerto Rico Code 29 L.P.R.A. § 283 regulates the meal periods granted to workers. All non-exempt employees are entitled to 1 hour for a meal, to be taken between the third and sixth consecutive hours of work. An "employer who requires or allows an employee to work for a period longer than five (5) consecutive hours, without providing a meal period, must pay the employee an extraordinary compensation for the time worked" at a rate of one and a half times the regular rate of pay. *Id.* HP Services willfully violated this section by requiring or failing to allow Rodriguez-Ortiz and the Putative Class Members their regular meal periods.

74. Puerto Rico Code 29 L.P.R.A. § 501, et seq., requires employers to pay workers who have worked a certain number of hours a bonus (commonly called a "Christmas Bonus"). This bonus is provided in addition to any other wages or benefits of any other kind to which an employee is entitled. *Id.* HP Services employed the requisite number of workers, but willfully failed to pay a bonus to those Putative Class Members who qualified.

75. As a result of HP Services' willful violations of the applicable Puerto Rico Labor Laws, Rodriguez-Ortiz and the Putative Class Members are entitled to recover their respective unpaid

compensation, liquidated damages (double damages), as provided for by the Puerto Rico Labor Law, attorneys' fees and costs, pre- and post- judgment interest, and such other legal and equitable relief as this Court deems just and proper.

76. Accordingly, Rodriguez-Ortiz and the Puerto Rico Class Members are entitled to overtime wages under Puerto Rico law in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

### VIII. Virgin Islands Violations

77. Rodriguez-Ortiz brings this claim under Virgin Islands law as a Rule 23 class action.

78. Virgin Islands law requires employers like HP Services to pay overtime at a rate of time and one half their regular rate of pay for all hours worked (i) on a sixth consecutive day, (ii) over forty in one work week, and/or (iii) over eight hours in a day, in violation of Virgin Island Code Wage and Hour Laws and Regulations, 24 V.I.C. §20. ("V.I.C. Wage and Hour Claims").

79. HP Services required Rodriguez-Ortiz and the Virgin Islands Class to work more than 5 consecutive days without additional compensation as required by 24 V.I.C. § 20(a).

80. HP Services required Rodriguez-Ortiz and the Virgin Islands Class to work more than 8 hours in a workday without additional compensation as required by 24 V.l.C. § 20(a).

81. HP Services required Rodriguez-Ortiz and the Virgin Islands Class to work more than 40 hours within a workweek without additional compensation as required by 24 V.I.C. § 20(a).

82. HP Services failed to properly disclose or apprise Rodriguez-Ortiz and the Virgin Islands Class of their right a employees under the V.I.C.

83. Accordingly, Rodriguez-Ortiz and the Virgin Islands Class are entitled to overtime wages under Virgin Islands law in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

## IX. CLASS AND COLLECTIVE ACTION ALLEGATIONS

84. Rodriguez-Ortiz incorporates all previous paragraphs and alleges that the illegal pay practices HP Services imposed on Rodriguez-Ortiz were likewise imposed on the Putative Class Members.

85. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA, Puerto Rico law, and US Virgin Island law.

86. Numerous other individuals who worked with Rodriguez-Ortiz indicated they were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

87. Based on their experiences and tenure with HP Services, Rodriguez-Ortiz is aware that HP Services' illegal practices were imposed on the Putative Class Members. At this time, numerous employees of HP Services have opted in to this litigation.

88. The members of the Day Rate Class were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of 40 per week.

89. The members of the Hourly Class were all improperly classified as independent contractors and not paid the correct rate for their hours worked in excess of 40 per week.

90. HP Services's failure to pay appropriate wages and overtime compensation at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

91. Rodriguez-Ortiz's experiences are therefore typical of the experiences of the Putative Class Members.

92. The specific job titles or precise job locations of the various members of the Putative Class Members do not prevent class or collective treatment.

93. Rodriguez-Ortiz has no interests contrary to, or in conflict with, the Putative Class Members. Like each member of the Putative Class, Rodriguez-Ortiz has an interest in obtaining the unpaid overtime wages owed under federal law.

94. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

95. Absent this action, many members of the Putative Class likely will not obtain redress of their injuries and HP Services will reap the unjust benefits of violating the FLSA and state laws.

96. Furthermore, even if some of the members of the Classes could afford individual litigation against HP Services, it would be unduly burdensome to the judicial system.

97. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

98. The questions of law and fact common to each of the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a) Whether HP Services employed the members of the Classes within the meaning of the FLSA or state law;

   b) Whether the members of the Classes were improperly misclassified as independent contractors;

   c) Whether HP Services' decision to classify the members of the Classes as independent contractors was made in good faith;

   d) Whether HP Services' decision to not pay the correct amount for overtime to the members of the Classes was made in good faith;

   e) Whether HP Services' violation of the FLSA was willful; and

  f) Whether HP Services' illegal pay practices were applied uniformly to all members of the Classes.

99. Rodriguez-Ortiz's claims are typical of the claims of the Putative Class Members. Rodriguez-Ortiz and the Putative Class Members sustained damages arising out of HP Services' illegal and uniform employment policy.

100. Rodriguez-Ortiz knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

101. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## IX. JURY DEMAND

102. Rodriguez-Ortiz demands a trial by jury.

## X. RELIEF SOUGHT

103. WHEREFORE, Rodriguez-Ortiz prays for judgment against HP Services as follows:

  a. For an Order designating the Day Rate Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

  b. For an Order designating the Hourly Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

  c. For an Order pursuant to Section 16(b) of the FLSA finding HP Services liable for unpaid back wages due to Rodriguez-Ortiz and the Putative Classes for liquidated damages equal in amount to their unpaid compensation;

  d. For an Order designating the state law classes as class actions pursuant to Fed. R. Civ. P. 23;

  e. For an Order appointing Rodriguez-Ortiz and his counsel as Class Counsel to represent the interests of the both the federal and Puerto Rico Class;

  f. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

  g. For an Order granting such other and further relief as may be necessary and appropriate.

Dated: New York, New York
   April 26, 2021

          Respectfully submitted,

          */s/ Dana Cimera*
          Dana M. Cimera
          **FITAPELLI & SCHAFFER, LLP**
          Dana M. Cimera
          28 Liberty Street, 30th Floor
          New York, NY 10005
          Telephone: (212) 300-0375

Michael A. Josephson
Texas Bar No. 24014780
Richard M. Schreiber
State Bar No. 24056278
Andrew Dunlap
Texas Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH, PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone:    (713) 877-8788
Telecopier:    (713) 877-8065
rburch@brucknerburch.com

## CERTIFICATE OF SERVICE

I served a copy of this document on all counsel of record via the Court's ECF system and the Federal Rules of Civil Procedure on April 26, 2021.

*/s/ Dana Cimera*
Dana Cimera